IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

WALTER JOSEPH MEGNA,

Plaintiff,

Case No. 24-CV-588

v.

JOHN MUSIAL and ALEXIS ZAK,

Defendants.

# DEFENDANTS JOHN MUSIAL AND ALEXIS ZAK'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION

Defendants John Musial and Alexia Zak (improperly named "Alexis Zak") by their attorneys Crivello, Nichols & Hall, S.C., respectfully submit this brief in support of their motion for reconsideration.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

Megna originally filed suit on May 13, 2024, (Dkt. 1), and subsequently filed an amended complaint on July 3, 2024, (Dkt. 10). After screening, the Court allowed Megna to proceed with a Fourth Amendment illegal stop claim against Captain Musial and a Fourth Amendment illegal search claim against Officer Zak. (Dkt. 11, p. 3-4).

On February 13, 2025, Defendants moved for summary judgment, arguing (1) the *Heck* doctrine barred Megna's claims; (2) Megna's illegal stop claim failed as a matter of law; (3) Megna's illegal search claim failed as a matter of law; and (4) the Defendants were entitled to qualified immunity. (Dkt. 37). Plaintiff's response was silent on the issue of qualified immunity. (Dkt. 51). Defendants flagged Plaintiff's failure to address qualified immunity for the Court in their reply brief

and argued that qualified immunity was now undisputed, so the Court should dismiss the case in its entirety with prejudice. (Dkt. 54, p. 11).

On May 12, 2025, the Court issued its decision and order on Defendants' motion for summary judgment. (Dkt. 58). The Court held that (1) Megna's claims **were not** barred by the *Heck* doctrine; (2) Defendants **were not** entitled to summary judgment on the illegal stop claim; and (3) Defendants **were** entitled to summary judgment on the illegal search claim. (*Id.*) The decision and order was silent on the issue of qualified immunity. (*See id.*)

Defendants now move for reconsideration based on the Court's manifest errors with respect to the misapplication of the *Heck* Doctrine and the Court's oversight of the issue of qualified immunity.

## ARGUMENT

**I.       FED. R. CIV. P. 59(e) STANDARD.**

A Rule 59(e) motion is a request to the Court to alter or amend a judgement on the basis of a manifest error of law or fact or newly discovered evidence. *Otto v. Metro Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); *see also Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). "A 'manifest error' is not demonstrated by the disappointment of the losing party." *Otto*, 224 F.3d at 606. Rather, a manifest error is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Winney*, 489 U.S. 169, 174, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989).

**II.      THE DECISION AND ORDER MISAPPLIED THE *HECK* DOCTRINE.**

In denying summary judgment on *Heck* grounds, the Court held:

Here, Megna is not challenging his conviction for possession of heroin or bail jumping, he merely is seeking some form of damages for the loss of his time and the

> insult inflicted by an allegedly improper traffic stop and search. *See Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017). Even if he were to prevail on his claims, the later discovery of heroin in his rectum, his no contest plea, and his conviction would not be impacted. Accordingly, Megna's claims are not barred by the *Heck* doctrine.

(Dkt. 58, p. 5). But, when determining whether *Heck* bars claims, it matters not whether a plaintiff specifically challenges the underlying conviction, it only matters whether a plaintiff's allegations are inconsistent with that conviction. *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that [plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." (internal citations omitted)).

On a macro level, the Supreme Court established the *Heck* doctrine to uphold the integrity of state court convictions and to avoid inconsistent judgements between state and federal courts: there is "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). *Heck* was designed to prevent individuals from using civil rights lawsuits to indirectly challenge their criminal convictions; the Court has long expressed, "to support [the] finality and consistency in the judicial process [it] has generally declined to expand opportunities for collateral attacks." *Id.* at 484-85 (collecting cases). Stated another way, *Heck* prevents litigants from exploiting the federal court system to intrude on the sanctity of state court convictions.

As explained in the Defendants' moving brief in support of summary judgment, each of Megna's claims challenge the conduct that led to his conviction. Without the stop, there would be no search. Without the search, there would be no arrest. Without the arrest, there would be no discovery of the heroin in Megna's anal cavity. Without the discovery of the heroin, there would be no possession or bail jumping charge. Without the possession and bail jumping charges, there would be no conviction. In other words, should Megna succeed on his claims in this case, all evidence in

3

the criminal matter could be considered fruit of the poisonous tree. *Segura v. United States*, 468 U.S. 796, 804 (1984) (citing *Nardone v. Unites States*, 308 U.S. 338, 341 (1939); *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Megna's allegations are inconsistent with his criminal conviction and are therefore barred by *Heck*. 512 U.S. at 484.

Moreover, Megna did not address Defendants' *Heck* argument in his response materials, thereby waiving any opposition to the same. *U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (collecting cases). The Seventh Circuit has repeatedly "made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *Id.* (collecting cases); *see also U.S. v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to legal authority are waived."). A party waives an argument if it fails "to properly support and develop in the brief the factual basis essential to its disposition." *Lee v. Chicago Youth Centers*, 69 F. Supp. 3d 885, 888 (N.D. Ill. 2014) (*citing Morgan v. South Bend Community School Corp.*, 797 F.2d 471, 480 (7th Cir.1986). Similarly, the Seventh Circuit has consistently held that "skeletal arguments in briefs are waived." *Id.* at 889 (collecting cases).

It is not the responsibility of this Court "'to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.'" *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) (internal citations omitted); *see also Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir. 2013) ("It is not the district court's job to flesh out every single argument not clearly made."). "Judges are not clairvoyant, and if they were required to go out of their way to analyze every conceivable argument not meaningfully raised, their work would never end." *Williams*, 724 F.3d at 963. Accordingly, a court is not obligated to consider or express any view on the merits of a party's waived argument. *See Beavers*, 756 F.3d at 1059.

Therefore, not only did this Court commit manifest error by holding the *Heck* doctrine did not bar Megna's claims, but this Court failed to acknowledge Megna's waiver of any argument against application of the *Heck* doctrine to his claims. These errors warrant reconsideration under Rule 56(e).

## III. THE COURT ERRED BY FAILING TO ADDRESS QUALIFIED IMMUNITY.

This Court must decide whether Defendants are entitled to qualified immunity because such a decision is necessary for Defendants to determine whether an interlocutory appeal is not only beneficial, but even possible in the first place. However, there is only one legally sound decision when it comes to qualified immunity: Megna wholly failed to respond to the affirmative defense, and the Defendants are entitled to the same. This Court should reconsider its prior ruling and dismiss both claims with prejudice.

### A. A Decision on Qualified Immunity is Required.

Summary judgment decisions are only appealable in limited circumstances: those in which the Court determines the issue of qualified immunity based on a matter of law. *Smith v. Finkley*, 10 F.4th 725, 729 (7th Cir. 2021) (when addressing the issue of qualified immunity on appeal, "appellate jurisdiction is limited: we can resolve an abstract legal question, but not factual disputes that are important to and inseparable from the qualified immunity defense.") All other summary judgment decisions are considered non-final orders, as the jury is tasked with making determinations of fact. *Estate of Williams by Rose v. Cline*, 902 F.2d 643, 648 (7th Cir. 2018).

When determining whether the Seventh Circuit has jurisdiction over a qualified immunity decision, the court first looks to whether the district court "identifies factual disputes **as the reason for denying qualified immunity**," and second, whether appellants "adopt the plaintiff's facts, or instead make a 'back-door effort' to use disputed facts." *Smith*, 10 F.4th at 736 (emphasis added).

5

However, when a defendant raises the issue of qualified immunity and the Court fails to address the affirmative defense at all, there is no opportunity for the defendant to discern whether an appeal has a legal basis, let alone whether an appeal is strategically sound.

The Court's omission of any ruling on the issue of qualified immunity has stripped the Defendants from the opportunity of an interlocutory appeal, and even the most basic knowledge of if an interlocutory appeal is a viable avenue. Thus, the Court's failure to address the Defendants' invocation of qualified immunity is a manifest error and this Court must alter its judgment accordingly pursuant to Rule 56(e).

**B.   Plaintiff Conceded the Issue of Qualified Immunity; Thus, the Court Must Dismiss This Case.**

When the Court does address qualified immunity, it must grant summary judgment in the Defendants' favor. Despite Defendants properly raising the affirmative defense of qualified immunity within their answer to the complaint and within their motion for summary judgment, Megna failed to address the issue; therefore, he did not satisfy his burden to overcome qualified immunity and forfeited any opposition to the same. Consequently, the Court erred by refusing to extend qualified immunity to Defendants.

Under the qualified immunity doctrine, "government officials performing discretionary functions are immune from suit if their conduct 'could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006) (quoting *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013 (7th Cir. 2006)). An official is entitled to immunity if, when he acted, "he reasonably could have determined that his actions did not violate clearly established law." *Cham v. Wodnick*, 123 F.3d 1005, 1008 (7th Cir. 1997), *cert denied*, 522 U.S. 1117 (1998) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-*

6

*Kidd*, 563 U.S. 731, 741 (2011) (internal citations omitted). In fact, public officials are shielded from suit where officials "of reasonable competence could disagree" that such acts were objectively reasonable. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Accordingly, "if officers of reasonable competence could disagree . . . immunity should be recognized." *Id.* This standard "gives government officials breathing room to make reasonable but mistaken judgments" by "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (internal quotations omitted).

Qualified immunity is an affirmative defense. *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021) (quoting *Sinn*, 911 F.3d at 418). The Seventh Circuit instructs that "[a]lthough the privilege of qualified immunity is a defense, **the plaintiff carries the burden of defeating it**." *Mannoia*, 476 F.3d at 457 (citing *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003)) (emphasis added). Thus, the plaintiff **always** bears the burden of establishing the existence of a clearly established constitutional right and a violation of that right by the public official. *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). "A failure to show either [prong] is fatal for the plaintiff's case." *Sinn*, 911 F.3d at 418 (7th Cir. 2018) (quoting *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017)). Accordingly, the defendant is entitled to qualified immunity if the plaintiff fails to meet his burden on either prong. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017) (quoting *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014).

There is limited case law in the Seventh Circuit regarding a plaintiff's complete failure to address qualified immunity on specific claims once the defense is raised by the defense. In *Sinn v. Lennon*, the plaintiff sued municipal officials for alleged violations of the Eighth Amendment. 911 F.3d at 417-18. All defendants but one moved for judgment on the pleadings. *Id.* at 418. Two of the defendants "raised the affirmative defense of qualified immunity, and [the plaintiff] argued

7

'absolutely nothing in response.'" *Id.* The district court granted the motion for those defendants based on qualified immunity, reasoning that the plaintiff presumably conceded the issue. *Id.* The plaintiff moved for reconsideration, where he again failed to substantively address the issue of qualified immunity. *Id.* at 418-19.

On appeal, the plaintiff admitted his response to the defendants' motion for judgment on the pleadings did not "have a section devoted to the qualified immunity issue," but argued that "his brief sufficiently addressed the constitutional deprivations" allegedly caused by the defendants. *Id.* at 418. The Seventh Circuit disagreed, holding that even assuming the complaint stated a claim that the defendants' conduct violated the Constitution, the plaintiff "did not address the 'clearly established' prong of qualified immunity in the district court" and therefore the plaintiff was barred from relitigating the matter on appeal. *Id.* at 418-19.

Similarly, in *Fultz v. Taylor*, an unreported decision from the Northern District of Indiana, defendants raised qualified immunity in their moving brief in support of their motion for summary judgment on the plaintiff's claim that defendants were deliberately indifferent to his suicide attempts. 2023 WL 2328212, at *1, 5 (N.D. Ind. Mar. 1, 2023). The pro se plaintiff failed to respond to the qualified immunity argument. *Id.* In the court's words, "[t]he required briefing [was] not just deficient; it [was] totally absent." *Id.*

The *Fultz* court independently reviewed the record, which revealed that the qualified immunity argument was not frivolous as to all but one officer, Officer Rak. *Id.* The undisputed evidence showed Officer Rak responded to reports of plaintiff's suicide attempts "by dancing, laughing, and taunting him while refusing to help him . . ." *Id.* at *7. Officer Rak, the court found, engaged in conduct "so shockingly unconstitutional . . . that a qualified immunity argument in defense of it would be frivolous and would not merit response on summary judgment." *Id.*

8

As for the other defendants, the court held that qualified immunity was not frivolous. *Id.* at *5. Specifically, the court found that it was not frivolous for the defendants to raise qualified immunity because the illegality of their alleged responses to the plaintiff's reports of suicidal ideation (including the timing of the same) was not obvious. *Id.* at *5-6. Based **solely** on plaintiff's failure to address the defendants' non-frivolous qualified immunity arguments, the court granted summary judgment to the remaining defendants. *Id.* The court cautioned "[w]hile any failure to respond on summary judgment waives a nonfrivolous argument, **the failure is especially glaring here because qualified immunity places a significant burden on the plaintiff**." *Id.* at *5 (emphasis added).

Consistent with Seventh Circuit precedent, both the Tenth and Sixth Circuits have similarly held that a plaintiff waives his or her opposition to qualified immunity by failing to address the defense when its raised, and that a plaintiff's failure to meet his or her burden to overcome qualified immunity warrants the dismissal of the claims against which immunity may be asserted.

In *Smith v. McCord*, now-Justice Gorsuch held that dismissal is appropriate when a plaintiff fails to address qualified immunity. 707 F.3d 1161 (10th Cir. 2013). In *Smith*, the plaintiff sued law enforcement officers alleging excessive force under § 1983. *Id.* at 1162. The defendants moved for summary judgment, again raising the defense of qualified immunity. *Id.* The plaintiff[1] did not respond to the qualified immunity argument. *Id.* Rather, the plaintiff responded only that there was a material dispute of fact, which in turn would preclude summary judgment. *Id.* The *Smith* court reiterated the standard for defeating a qualified immunity defense, and concluded that:

---

[1] At the heart of *Smith* was whether the plaintiff was entitled to relief for his counsel's failures. *See generally*, 707 F.3d 1161. As the issue in this case relates only to Megna's failure to address qualified immunity—not *who specifically* failed to address qualified immunity on Megna's behalf—Defendants will refer to plaintiff and plaintiff's counsel in *Smith* simply as "plaintiff."

9

> These are the burdens [plaintiff] didn't even try to meet. His response brief failed even to include the terms "qualified immunity" or "clearly established." Inexorably, this led the district court to grant judgment of the defendants, a disposition this court can hardly now fault as a matter of law.

*Id.*

In *Doe v. Board of Regents of University of Michigan*, the Sixth Circuit held that failure to respond to a qualified immunity argument results in waiver of the same. 2023 WL 5095799 (6th Cir. Aug. 9, 2023) (not reported). In *Doe*, the plaintiff sued both the Board of Regents and individual defendants alleging retaliation for the plaintiff's "report[ing] concerning administrative practices, particularly related to transparency and accountability." *Id.* at *1-2. The individual defendants brought a motion to dismiss and raised the affirmative defense of qualified immunity. *Id.* at *2. Noting that the plaintiff failed to make any argument against qualified immunity, the Sixth Circuit held that the plaintiff "forfeited any argument that the individual defendants were not protected by qualified immunity." *Id.* at *3.

### i. Megna Failed to Meet his Burden to Show that Defendants' Alleged Conduct Violated a Clearly Established Right.

In this case, Megna claims that the Defendants violated his Fourth Amendment rights by conducting an illegal traffic stop and by conducting an illegal search and seizure. (*See generally*, Dkt. 1). Within their brief in support of their motion for summary judgment, Defendants raised qualified immunity for both claims. (Dkt. 37, pp. 24-27). By simply raising qualified immunity as an affirmative defense, Defendants placed the burden on Megna to overcome it. *Sinn*, 911 F.3d at 419 (internal citations omitted).

Once Defendants raised qualified immunity, Megna **always** bore the burden to show his constitutional rights were both violated and clearly established at the time of the violation. *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). And

10

"where the reasonableness of an officer's actions depends on the circumstances, **as it does here**, plaintiffs must define clearly established law with much more specificity." *Sabo*, 128 F.4th at 844 (internal citations omitted) (emphasis added).

With respect to the second prong, Megna's burden required him to demonstrate that the rights alleged to have been violated were "clearly established" in one of three ways: (1) "[f]irst, by identifying a 'closely analogous case finding the alleged violation unlawful[;]'" (2) "[s]econd, by identifying in the relevant caselaw 'such a clear trend . . . that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time[;]'" and (3) third, "reserved for 'rare cases,' [by showing the alleged conduct] was 'so egregious and unreasonable that no reasonable official could have thought he was acting lawfully.'" *Stockton*, 44 F.4th at 620–21. "To determine whether clearly established law prohibited the defendant's conduct, [the Court] must frame the asserted right 'in terms granular enough to provide fair notice.'" *Sabo*, 128 F.4th at 845 (internal citations omitted).

As in *Fultz*, Megna did not even attempt to meet his burden. Within his opposing materials, Megna did not develop any substantive arguments, analyze the complaint's allegations within the specific context of the constitutional rights allegedly violated by his conduct, or identify closely analogous controlling precedent holding that the rights in question were clearly established at the time. (*See generally*, Dkt. 51).

Megna simply did not address qualified immunity regarding his claims against Defendants whatsoever. (*Id.*) Although the § 1983 claims against Defendants asserted in the complaint invoke the Fourth Amendment, Megna made no attempt in his response brief to establish that any constitutional right allegedly violated by either Defendant was "clearly established" at the time of their alleged actions. (*Id.*)

11

In fact, the only two cases Megna did point to in his entire brief – *Florida v. Royer*, 460 U.S. 491 (1983) and *Brendin v. California*, 551 U.S. 249 (2007) – bear no similarities to the facts of this case.[2] In *Royer*, law enforcement arrested an individual at an airport after observing him exhibit behavior consistent with drug trafficking, questioning him, and searching his suitcase. 460 U.S. at 493-95. There, two detectives stopped Royer in the concourse of an airport, believing his actions fit the "drug courier profile." *Id.* at 493-94. The detectives identified themselves and asked to speak with Royer, who agreed. *Id.* at 494. The detectives procured Royer's ticket and identification, asked questions about Royer's identity, and explained they suspected him of drug trafficking. *Id.* Without returning his ticket or identification, the detectives asked Royer to join them in a private room, used his baggage check stubs to retrieve his luggage, and once in the room obtained the luggage key from Royer and searched the same. *Id.* Drugs were found in the luggage. *Id.* at 494-95. While the broad sweeping question at issue in *Royer* was whether law enforcement illegally detained Royer in violation of the Fourth Amendment, that is where the similarities end; and that alone is insufficient to demonstrate Megna's rights were clearly established at the time of his arrest. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition.")

In *Brendin*, the Court confronted the question of whether passengers of vehicles could challenge seizures under the Fourth Amendment. 551 U.S. at 251. There, law enforcement pulled over a vehicle purportedly to investigate the status of its registration, despite admitting there was no observed unlawful conduct (or even reasonable suspicion of same) prior to the stop. *Id.* at 252. Specifically, law enforcement saw a parked vehicle with expired registration tags. *Id.* However,

---

[2] As the Court ultimately determined Defendants' search of Megna was lawful (Dkt. 58, pp. 9-11), Defendants will solely focus their analysis on the seizure aspects of each case.

12

through talking with dispatch, law enforcement learned a registration renewal application was being processed. *Id.* Later, the same officers saw the same car on the road. *Id.* This time, law enforcement noticed the vehicle displayed a temporary permit showing the car was currently legal to operate. *Id.* "The officers decided to pull the Buick over to verify that the permit matched the vehicle, even though, as [law enforcement] admitted later, there was nothing unusual about the permit or the way it was affixed." *Id.* Again, while the general question in *Brendlin* was whether law enforcement violated the plaintiff's Fourth Amendment rights through a traffic stop, that is not nearly similar enough to show Megna's rights were clearly established at the time of the Defendants' conduct. *Harlow*, 457 U.S. at 815.

Neither of the cases cited by Megna address whether Defendants in this case violated a clearly established right. And it was Megna's burden to cite those cases and make those arguments—not Defendants'. Declining to dismiss the claims against Defendants based on qualified immunity erroneously imposes Megna's burden of persuasion on Defendants.

### ii. Defendant's Qualified Immunity Defense is Not Frivolous.

Not only did Megna fail to meet his burden to overcome the affirmative defense of qualified immunity, but Defendants' assertion of the defense was not frivolous.[3] A party's failure to respond to a dispositive argument before a district court is not always "in itself a forfeiture requiring that [the appellate court] reverse the judgment appealed from." *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001). Specifically, a party's failure to respond to a frivolous argument that would otherwise be dispositive "will not warrant reversal." *Id.* But that is not the case here. Defendants' qualified immunity defense is not frivolous because the illegality of their conduct, as alleged and

---

[3] Again, the Defendants confine their arguments only to qualified immunity on Megna's seizure claim.

challenged by Megna, is not obvious or clearly established. *See Fultz*, 2023 WL 2328212 at \*6 (holding that the qualified immunity defense was not frivolous because the illegality of the challenged conduct was not obvious).

"Frivolous" is defined as "lacking a legal basis or legal merit; manifestly insufficient as a matter of law." Frivolous Definition, Black's Law Dictionary, (12th ed. 2024), *available at Westlaw*. The Seventh Circuit has held appeals to be frivolous when they are wholly without merit, *see, e.g., McCoy v. Iberdrola Renewables, Inc.*, 769 F.3d 535, 538 (7th Cir. 2014); lawsuits to be frivolous when the probability of success is very low, *Maxwell v. KPMG LLP*, 520 F.3d 713, 719 (7th Cir. 2008); and claims to be frivolous when "no reasonable person could suppose [it] to have any merit," *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir.2000). Here, there is legal merit to the Defendants' qualified immunity argument; therefore, it is not frivolous.

Even if Megna could establish that there was some violation of his constitutional rights through Defendants' alleged actions, these rights were not clearly established at the time of the alleged conduct. "It is insufficient for a plaintiff simply to point out a recognized constitutional right and claim that the right has been violated." *Borello*, 446 F.3d at 750. The Supreme Court instructs that the "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 8 (2021) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). The law in this instance was not clearly established at the time of the Defendants' stop of the Megna's vehicle that stopping a vehicle for a perceived traffic violation somehow violated Megna's constitutional rights. If anything, the established law supports the Defendants' stop. Consequently, any reasonable officer in a similar situation would not understand their actions as violating a clearly established right.

14

As explained in the Defendants' moving brief, *United States v. Tipton*, 3 F. 3d 1119, 1122 (7th Cir. 1993), established that officers were justified in stopping a vehicle when the vehicle's license plate was not visible. There, officers stopped a vehicle had neither visible licenses plates on the front or back of the vehicle nor a visible license plate sticker. *Id.* at 1121. Eventually, just as with Megna, the stop led to an arrest and the eventual retrieval of narcotics. *Id.* When Tipton challenged the stop, the court found that the failure to sufficiently display the license plate sticker alone was cause enough for an investigatory stop. *Id.* at 1122. Any officer in the Defendants' shoes, who witnessed the subject vehicle with illegible license plates, would not know their conduct in conducting the stop was illegal.

It must be noted that, contrary to the Court's decision, there is no dispute of fact regarding the **Defendants'** reasoning for stopping Megna: driving without a registration plate light at night. (Dkt., p. 8). Indeed, the Court acknowledged that it was **Officer Place**, not either of the two named Defendants, who "explained to Sukowaty that police stopped her truck because the license plate was dirty, not because the license plate was out." (Dkt. 58, p. 8). When determining the collective knowledge doctrine did not apply to anonymous tips, the Court held the "Defendants cannot rely on information known only to other officers to support a finding of reasonable suspicion if that information was unknown to them." (Dkt. 58, p. 7). It is only fair for the same logic to apply with respect to the reason behind the stop. Officer Place was not involved in the traffic stop and Megna has pointed to no evidence to suggest either Defendant shared their reason for stopping Megna with Officer Place.

But, even if the Defendants were mistaken and the license plate was illegible due to dirt—as opposed to a lack of lighting—the law was still not clearly established that Defendants' conduct violated Megna's constitutional rights.

15

> Pursuant to Wis. Stat. § 341.15(2),
>
>> Registration plates shall be attached firmly and rigidly in a horizontal position and conspicuous place. **The plates shall at all times be maintained in a legible condition and shall be so displayed that they can be readily and distinctly seen and read**. Any peace officer may require the operator of any vehicle on which plates are not properly displayed to display such plates as required by this section.

(emphasis added). As the Court noted, Sukowaty conceded the dirtiness of the plate, but erroneously concluded "the video does not seem to support that premise" based on the body camera:



(Dkt. 43-A, 01:51). It is undisputed that the license plate was not legible consistent with Wisconsin law. Simply because Defendants may have been mistaken about the cause of the illegibility of the license plate does not suddenly render their conduct unconstitutional.

Because Megna failed to meet his burden and did not meaningfully address or develop arguments in opposition to Defendants' nonfrivolous qualified immunity defense, this Court should have granted qualified immunity to the Defendants and dismissed this case in its entirety.

16

**CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that the grant their motion for reconsideration.

Dated this 5th day of June, 2025.

                                   CRIVELLO, NICHOLS & HALL, S.C.
                                   Attorneys for Defendants, Captain John Musial and Officer Alexia Zak

                                   By: *s/ Brianna J. Meyer*
                                         STEVEN C. McGAVER
                                         State Bar No.: 1051898
                                         BRIANNA J. MEYER
                                         State Bar No.: 1098293
                                         MAIA I. HENTGES
                                         State Bar No.: 1138038
                                         710 N. Plankinton Avenue, Suite 500
                                         Milwaukee, WI 53203
                                         Phone: 414-271-7722
                                         Fax: 414-271-4438
                                         Email: smcgaver@crivellolaw.com
                                                                   bmeyer@crivellolaw.com
                                                                   mhentges@crivellolaw.com